Tricia L. Legittino (SBN 254311)
tlegittino@fkks.com
FRANKFURT KURNIT KLEIN + SELZ PC
2029 Century Park East, Suite 1060
Los Angeles, California 90067
Telephone: (310) 579-9600
Facsimile: (310) 579-9650

Attorneys for CITIBANK, N.A.
improperly sued herein as Citigroup Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ANTHONY MILLER,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>CITIGROUP INC.; EARLY WARNING SERVICES, LLC; WELLS FARGO, N.A.; DOES 1-50 INCLUSIVE,<br><br>　　　　Defendants. | Case No. 2:21-cv-4237-FLA-MRW<br><br>**DECLARATION OF JULY ELLY IN SUPPORT OF DEFENDANT CITIBANK, N.A.'S NOTICE OF MOTION AND MOTION FOR AN ORDER COMPELLING ARBITRATION AND STAYING ACTION**<br><br>Date: July 16, 2021<br>Time: 1:30 p.m.<br>Crtm: 6B |

FKKS:2971775v.2  28253.800

# DECLARATION OF July Elly

I, July Elly, declare:

1. I am an employee of Citibank ("Citibank" or "Bank") and I am currently the Branch Manager of Citibank's branch located at 4500 Atlantic Ave., Long Beach, CA 90807 (the "Branch").

2. I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently hereto since the facts set forth herein are known to me to be true and/or I have gained knowledge of said facts from the books and records maintained by Citibank in the ordinary course of business. I make this declaration in support of Citibank's Notice of Motion and Motion for an Order Compelling Arbitration and Staying Action (the "Motion").

**Background of My Work at Citibank.**

3. Since 2011, I have been employed by Citibank as a branch manager and became manager of the Atlantic Avenue Branch in 2015. From looking at Citibank's records, I know that Mr. Anthony Miller ("Miller") has two Citibank checking accounts: checking account ending in numbers 9345, opened in November 2010 (the "2010 Account"), and checking account ending in numbers 9416, opened on May 8, 2020 (the "2020 Account").

4. I was trained on Citibank's procedures for opening checking accounts for its customers when I started working at Citibank in 2011. In my position as a Branch Manager at Citibank, my job duties required me to both open checking accounts for Citibank customers which process includes providing them with the necessary agreements and paperwork. Once Citibank personal bankers receive formal training in the opening of checking accounts, I guide, assist, and supervise them in the opening of checking accounts for Citibank customers. As a result of my work at Citibank with checking accounts over the last ten years, I am familiar with Citibank's standard procedures with regard to opening checking accounts for

Citibank customers, both online and in-person.

5. Also, as part of my duties at Citibank, I manage all retail aspects of the Branch, including bankers, partners, operations, and clients. I am required to know and, in fact, I am familiar with the various jobs of Citibank employees who are involved in the handling of Citibank's books, files, documents and recordings pertaining to checking accounts opened and maintained at Citibank, including, but not limited to, the Client Manual Consumer Accounts document ("the Agreement") that each Citibank customer receives upon opening a checking account and Citibank's records regarding the Checking Account Signature Card ("Signature Card") that a customer is given at the same time they receive the Agreement and is required to sign. I am familiar with and have personally worked with and on Citibank's Records regarding checking accounts and have personal knowledge that these records were and are kept in the usual and ordinary course of Citibank's business and the entries therein are made at or about the time of the events recorded by individuals employed by Citibank who have personal knowledge of their contents and who have had a continuing business duty to make those entries and record those events at or about the time of the events recorded.

**Citibank's Policies for Opening a Checking Account.**

6. In summary, the customs and practices at the Branch for opening a checking account in May 2020 when Miller opened the 2020 Account included the following sequence of events:

a. The Citibank employee would verify the identity of the person requesting to open a checking account and, if they were a current Citibank customer, that their account(s) were in good standing with the Bank. The Citibank employee would also obtain valid identification from all customers, such as a valid driver's license.

FKKS:2971775v.2 28253.800

2

DECLARATION OF JULY ELLY IN SUPPORT OF DEFENDANT CITIBANK N.A.'S NOTICE OF MOTION AND MOTION FOR AN ORDER COMPELLING ARBITRATION AND STAYING ACTION

      b.      The Citibank employee would discuss with the customer the type of account they wanted to open, as well as the terms, conditions, and practices associated with such an account.

      c.      Next, the Citibank employee would provide the current Agreement and provide it to the customer. The customer was instructed to read the Agreement in its entirety and let the Citibank employee know if they had any questions.

      d.      On May 8, 2020, the then-current Agreement was the Agreement attached as Exhibit 1 to this Declaration, with an effective date of June 18, 2019 (the "2019 Agreement").  In November 2010, the then-current Agreement was the Agreement attached as Exhibit 3 to this Declaration, with an effective date of November 1, 2010 (the "2010 Agreement").

      e.      The Citibank employee would also manually fill out the Signature Card and obtain the customer's or customers' signature(s) on it.  The Citibank employee would have the customer sign and date the Signature Card to indicate that they understood and agreed to be bound by the terms and conditions pertaining to opening a new checking account, including the aforementioned Agreement.

**Citibank's Records Regarding the 2020 Account and Agreement.**

    7.      According to Citibank's internal records, Miller opened the 2020 Account personally at the Branch on May 8, 2020.  I know that Citibank complied with its policies as set forth in Paragraph "6" in opening the 2020 Account for Miller, as either myself or another Citibank employee guided and supervised the Citibank employee who opened the Account for Miller, and our training conformed with the procedures listed in Paragraph "6" above.  Further, I also supervised the work of all employees in the Branch in May 2020 and I do not recall that there was ever an issue with them failing to follow the procedures for opening checking accounts for Citibank customers.  Also, I do not recall, nor can I find any records in the files at the Branch, that there were any problems or issues with the paperwork

generated in connection with Miller's 2020 Account.

8. As laid out in Paragraph "6" above, all Citibank customers are required to sign the Signature Card before a checking account can be opened in their name. The Signature Card signed by Miller on May 8, 2020 is attached to this Declaration as Exhibit 2.

Directly above the signature, the card states:

> By signing below, I: (1) confirm that I have received and agree to be bound by all Citibank, N.A. terms and conditions applicable to my account(s), including the Client Manual Consumer Accounts, its Marketplace Addendum and/or any applicable loan note(s) or agreement(s), and (2) understand and acknowledge that, if applicable, such note(s)/agreement(s) provide that any dispute between us will be resolved by binding arbitration. (Ex. 2.)

9. As stated above in Paragraph "6," it was a custom and practice of Citibank in 2020, as it is now, that every time a customer sought to open a checking account, they were provided with a copy of the then-current Agreement. Attached to this Declaration as Exhibit 1 is the 2019 Agreement. I am aware that this was the governing Agreement in May 2020, and is what was given to Miller, as it would have been to any other person opening an account in May 2020. The 2019 Agreement first alerts customers to the arbitration provision on page 1, where it states in enlarged typeface:

> This manual contains some important information you should know about your deposit relationship with Citibank. It is an agreement between you and us. . . .This manual also contains an arbitration provision that covers all disputes between us. Please review this Client Manual thoroughly – and keep it for future reference. (Ex. 1 at 1.)

The full arbitration provision is laid out on pages 58-61 of the Agreement and provides, in part:

> **Arbitration**
> **PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.** [Emphasis in original.] THIS SECTION PROVIDES THAT DISPUTES MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, HAVE A JURY TRIAL OR INITIATE OR PARTICIPATE IN A CLASS ACTION. IN ARBITRATION, DISPUTES ARE RESOLVED BY AN ARBITRATOR, NOT A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN IN COURT. THIS ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL ARBITRATION ACT (FAA), AND SHALL BE INTERPRETED IN THE BROADEST WAY THE LAW WILL ALLOW. [Emphasis in original.]  (Ex. 1 at 58.)
>
> \*\*
>
> **Covered Disputes. You or we may arbitrate** any claims, dispute or controversy between you and us arising out of or related to your account(s), a previous related account or our relationship (called "Disputes"). **If arbitration is chosen by any party, neither you nor we will have the right to litigate that Dispute in court or have a jury trial on that Dispute.** [Emphasis in original.]
> Except as stated below, all Disputes are subject to arbitration no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek, including claims based on contract, tort (including intentional tort), fraud, agency, you or our negligence, statutory or regulatory provisions, or any other sources of law; claims made as counterclaims, cross-claims, third party claims, interpleaders or otherwise; claims made regarding past, present or future

conduct; and claims made independently or with other claims. Disputes include any unresolved claims concerning any services relating to such account, including without limitation, safe deposit box services, wire transfer services, and use of a Citibank Banking Card or Citibank Banking Card displaying the MasterCard Brand Mark. . . .Disputes also include claims relating to the enforceability or interpretation of any of these arbitration provisions. Any questions about whether Disputes are subject to arbitration shall be resolved by interpreting this arbitration in the broadest way the law will allow it to be enforced.  (*Id*.)

\*\*

**How Arbitration Works** [Emphasis in original.] Arbitration shall be conducted by the American Arbitration Association ("AAA") according to this arbitration provision and the applicable AAA arbitration rules in effect when the Dispute is filed ("AAA Rules"), except where those rules conflict with this arbitration provision. . . .Any in-person hearing will be held in the same city as the U.S. District Court closest to your home.

Administration may be requested at any time, even when there is a pending lawsuit, unless a trial has begun or a final judgment entered. Neither you nor we waive the right to arbitrate by filing or serving a complaint, answer, counterclaim, motion or discovery in a court lawsuit. . . . (*Id*. at 59.)

\*\*

**Paying for Arbitration Fees** [Emphasis in original.] We'll pay your share of the arbitration fee for an arbitration of Disputes of $74,000 or less if they are unrelated to debt collection. Otherwise, arbitration fees will be allocated according to the applicable AAA Rules. If we prevail, we may not recover our arbitration fees, unless the arbitrator decides your Dispute was frivolous. All parties are responsible for their own attorney's fees,

FKKS:2971775v.2 28253.800

6

DECLARATION OF JULY ELLY IN SUPPORT OF DEFENDANT CITIBANK N.A.'S NOTICE OF MOTION AND MOTION FOR AN ORDER COMPELLING ARBITRATION AND STAYING ACTION

expert fees and any other expenses, unless the arbitrator awards such fees or expenses to you or us based on applicable law. (*Id*. at 60.)

\*\*

**Rules for Rejecting this Arbitration Provision**
[Emphasis in original.]
You may reject this arbitration provision by sending a written rejection note to us at: 100 Citibank Drive, Attn: Arbitration Opt Out, San Antonio, TX 78245. Your rejection notice must state that you reject the arbitration provision and include your name, address, account number and personal signature. Your rejection notice will not apply to the arbitration provision(s) governing any other account(s) that you have or had with us. Rejection of this arbitration provision won't affect your other rights or responsibilities under this Agreement, including use of this account. (*Id*. at 61.)

10. I checked Citibank's records and there are no records that Miller ever rejected the arbitration provision. Further, as Exhibit 2 indicates, Miller signed the Signature Card on May 8, 2020, acknowledging that he agreed to be bound by the terms of that Agreement, including the arbitration provision.

**Citibank's Records Regarding the 2010 Account and Agreement.**

11. I am aware of the procedures to open an account in 2010 and believe them to be the same as those I outlined above in Paragraph "6." In November 2010, when Miller opened his account, the then-current Agreement was the 2010 Agreement, attached as Exhibit 3 to this Declaration. I am familiar with this Agreement, because I started working as a Branch Manager for Citibank in 2011 and regularly provided this Agreement to customers at that time. I am also aware that this was the governing Agreement in November 2010, and is therefore what was delivered to Miller, as it would have been to any other person opening an account at Citibank, at the time he opened the 2010 Account.

FKKS:2971775v.2 28253.800

7

DECLARATION OF JULY ELLY IN SUPPORT OF DEFENDANT CITIBANK N.A.'S NOTICE OF MOTION AND MOTION FOR AN ORDER COMPELLING ARBITRATION AND STAYING ACTION

12. I have made a diligent search, but I was unable to find the exact signature card signed by Miller for the 2010 Account.

13. On page 49 of the 2010 Agreement, attached hereto as Exhibit 3, is a sample Signature Card. I am familiar with what the Signature Cards looked like in 2010, and this page shows a fair and accurate representation of those cards. I am aware that this is the Signature Card that would have been provided to Miller at the time he opened the 2010 Account. Based on my personal knowledge, Miller would have been required to sign this Signature Card order to be able to open the 2010 Account, and the Account would not have been opened without Miller signing such a Signature Card. As page 49 of the 2010 Agreement shows, the Signature Card states directly above the customer's signature:

> By signing below, I: (1) certify my tax status; (2) agree to be bound by any agreement governing any account opened in the title indicated on this card. (Ex. 3 at 49.)

14. As stated above in Paragraph "6," it was a custom and practice of Citibank in November 2010, as it is now, that every time a customer sought to open a checking account, a copy of the 2010 Agreement was delivered to them. The 2010 Agreement first alerts customers to the arbitration provision on page 8 where it states:

> This Agreement contains an arbitration provision that authorizes either party to elect mandatory and binding arbitration of certain disputes. The terms of the arbitration provision are set forth in the section entitled "Resolution of Disputes by Arbitration." *PLEASE READ THIS ARBITRATION PROVISION CAREFULLY*. [Emphasis in original.] (Ex. 3 at 8.)

The full arbitration provision is laid out on pages 45-48 of Exhibit 3 and provides, in part:

> Resolution of Disputes by Arbitration

FKKS:2971775v.2  28253.800                         8
DECLARATION OF JULY ELLY IN SUPPORT OF DEFENDANT CITIBANK N.A.'S NOTICE OF MOTION AND MOTION FOR AN ORDER COMPELLING ARBITRATION AND STAYING ACTION

> PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. THIS SECTION CONTAINS IMPORTANT INFORMATION REGARDING YOUR DEPOSIT, READY CREDIT, CHECKING PLUS OR CHECKING PLUS (VARIABLE RATE) ACCOUNTS AND THE SERVICES RELATED THERETO. IT PROVIDES THAT EITHER YOU OR WE CAN REQUIRE THAT ANY DISPUTES BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, THE DISPUTE IS SUBMITTED TO A NEUTRAL PARTY, AN ARBITRATOR, INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT. [Emphasis in original.] (Ex. 2 at 45.)

\*\*

> **Agreement to Arbitrate Disputes** [Emphasis in original.]
> Either you or we may elect, without the other's consent, to require that any dispute between us, or concerning your Citibank deposit, Ready Credit, Checking Plus, or Checking Plus (variable rate), except those disputes specifically excluded below, be resolved by binding arbitration. (*Id.*)

\*\*

> **Disputes Covered by Arbitration** [Emphasis in original.]
> Any claim or dispute relating to or arising out of your deposit, Ready Credit, Checking Plus or Checking Plus (variable rate) account, this agreement, or our relationship, will be subject to arbitration. All disputes are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. Disputes include any unresolved claims concerning any services

relating to such account, including, without limitation, safe deposit box services, wire transfer services, and use of a Citibank Banking Card or Citibank Banking Card displaying the MasterCard Brand Mark . . . . Disputes include claims based on any theory of law, contract, statute, regulation, tort (including fraud or any intentional tort), or any other legal or equitable ground, and include claims made as counterclaims, cross-claims, third party claims, interpleaders or otherwise. A party who initiates a proceeding in court may elect arbitration with respect to any dispute advanced in that proceeding by any other party . . . . Disputes also include claims relating to the enforceability or interpretation of any of these arbitration provisions. Any questions about whether disputes are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced.  (*Id.*)

\*\*

**Commencing an Arbitration** [Emphasis in original.]
The party filing an arbitration must choose one of the following neutral arbitration forums and follow its rules and procedures for initiating and pursuing an arbitration: American Arbitration Association or JAMS. . . .The arbitration shall be conducted in the same city as the U.S. District Court closest to your home address, unless the parties agree to a different location in writing.  (*Id.* at 46.)

\*\*

**Costs** [Emphasis included in original.]
The party initiating the arbitration shall pay the initial filing fee. If you file the arbitration and an award is rendered in your favor, we will reimburse you for your filing fee. If there is a hearing, we will pay the fees and costs for the first day of that hearing.  All other fees and costs will be allocated in accordance with the rules of the arbitration forum. However, we will advance or reimburse filing and other fees if the arbitrator rules that you cannot afford to pay them or finds other good cause for requiring us to do so, or if you ask us and we

FKKS:2971775v.2 28253.800

10

DECLARATION OF JULY ELLY IN SUPPORT OF DEFENDANT CITIBANK N.A.'S NOTICE OF MOTION AND MOTION FOR AN ORDER COMPELLING ARBITRATION AND STAYING ACTION

determine there is good reason for doing so. Each party shall bear the expense of their respective attorneys, experts, and witnesses and other expenses, regardless of who prevails, but a party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines. (*Id.* at 47.)

\*\*

**Governing Law** [Emphasis included in original.]
You and we agree that our relationship includes transactions involving interstate commerce and that these arbitration provisions are governed by, and enforceable under, the Federal Arbitration Act. To the extent state law is applicable, the laws of the state governing your account relationship apply. (*Id.*)

15. Based on Citibank's custom and practices for opening checking accounts which, as stated above, I have been familiar with for the last ten years, it is my belief that the 2010 Agreement would have been delivered to Miller when he opened the 2010 Account, which contained the exact same arbitration provision as is at issue here. It is my further belief, based on my familiarity with Citibank's customs and practices, that Miller would have been required to sign a Signature Card identical to that shown on page 49 of Exhibit 3 in order to open the 2010 Account.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this __3rd__ day of June, 2021 at Long Beach, California.

_____
July Elly

FKKS:2971775v.2 28253.800

11

DECLARATION OF JULY ELLY IN SUPPORT OF DEFENDANT CITIBANK N.A.'S NOTICE OF MOTION AND MOTION FOR AN ORDER COMPELLING ARBITRATION AND STAYING ACTION